**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| TRAVIS MENDIOLA, individually and on behalf of all others similarly situated, Plaintiffs, v. HOME DEPOT U.S.A., INC., and THE ADMINISTRATIVE COMMITTEE HOME DEPOT U.S.A., INC. Defendants. | CASE NO.  8:20-cv-01561-MSS-SPF |

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS

The Complaint should be dismissed because: (1) The Complaint concedes that Plaintiff failed to exhaust administrative remedies; (2) Plaintiff lacks standing; and (3) the record properly before the Court shows that the Complaint fails to state a claim, because the ERISA notice that forms the sole basis for the Complaint complies with applicable law.[1]

## I.    PRELIMINARY STATEMENT

The Complaint concedes that Defendant Home Depot U.S.A., Inc. ("Home Depot"), caused its COBRA Administrator to send Plaintiff a timely notice of his right to elect to continue coverage under the Home Depot Medical and Dental Plan (the "Plan").[2] On its face, the COBRA notice (the "Notice") provides two simple options for electing continuation coverage – make a phone call, or

---

[1] Defendants are filing separate motions asking the Court (1) to stay the proceedings pending a ruling on (a) this case dispositive motion and (b) Defendants' pending 28 U.S.C. § 1404(a) Motion to Transfer this action to the United States District Court for the Northern District of Georgia, or, alternatively, (2) to initially limit the proceedings to discovery and dispositive motions on the individual Plaintiff's claims.

[2] Compl. ¶ 37. The name of the Plan was changed to the Home Depot Group Benefits Plan after a "wrap" amendment in February 2020.  A copy of the Plan and associated amendments are attached hereto as **Ex. A.** The Court may consider the Plan documents because the complaint necessarily relies on them, they are central to Plaintiff's Complaint, and their authenticity is undisputed.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Turner v. Allstate Ins. Co.*, No. 2:13-CV-685-WKW, 2016 U.S. Dist. LEXIS 132113, at *12-14 n.4 (M.D. Ala. Sep. 27, 2016).

log on to a website.[3] Despite the fact that literally thousands of former employees have successfully elected continuation coverage by following the clear directions in the Notice, Plaintiff makes the implausible claim that he was thwarted from electing continuation coverage due to alleged minor, technical noncompliance with DOL regulations. Compl. ¶¶ 1-12 (Dkt. 1) (citing 29 C.F.R. 2590.606-4(b)(4)); Compl. ¶¶ 36-37. It is plainly evident on the face of the Complaint that the alleged violations cannot possibly have caused any concrete or actual harm.

As set forth in detail below, the Notice fully complied with the regulations. As to some of the alleged deficiencies, the regulations do not actually require what Plaintiff claims they do. Other allegations are either false on the face of the record, or appear to be the result of an over-technical reading of the regulations that would do nothing to further COBRA's purpose of offering a convenient and efficient method for qualified individuals to elect continuation coverage.

At a minimum, Home Depot's COBRA Notice *substantially complied* with the regulations, which is all that is required of ERISA-related notices. As numerous courts have recognized, requiring strict compliance with ERISA notice obligations would harm beneficiaries by forcing benefit plans to incur the expense of responding to frivolous lawsuits, like this one, without affording any corresponding benefit, and would dissuade employers from offering benefit plans.

As a separate, threshold matter, Plaintiff failed to exhaust administrative remedies prior to filing suit, despite the fact that (1) the Plan provides a comprehensive claims and appeals procedure, and (2) the COBRA Notice itself provided administrative remedies specifically tailored to violations alleged by Plaintiff.[4]

---

[3] The Notice is attached to this Motion as **Ex. B**. The Notice may be considered by the Court given that the Complaint necessarily relies on it to establish the purported violations, it is central to the Complaint, and its authenticity cannot be disputed. *See Day*, 400 F.3d at 1276 (11th Cir. 2005).

[4] Plaintiff's allegation that there were no administrative remedies available is belied by the fact that after he filed suit, he made an untimely attempt to invoke administrative remedies.

Lastly, Plaintiff lacks Article III standing because he has not sufficiently alleged that defects in the Notice caused him a concrete injury or any injury that is "fairly traceable" to the alleged violations.

## II.   MEMORANDUM OF LAW

### A.   Standard for Motion to Dismiss

A complaint should be dismissed when it fails to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2009) (citation omitted).   The complaint must allege facts that plausibly establish each essential element of the asserted cause of action. *Real v. City of Fort Myers*, 787 F. App'x 624, 626 (11th Cir. 2019).   Although detailed factual allegations are not required, the Supreme Court requires more than mere "labels, conclusions and a formulaic recitation" of the elements of the cause of action. *Twombly,* 550 U.S. at 561-63.

### B.   Home Depot's Notice Fully Complies with COBRA's Notice Requirements.

The DOL's regulations list information to be included in a COBRA election notice.   29 C.F.R. § 2590.606-4(b).   Despite Home Depot's close adherence to both the pertinent regulation and the DOL's Model Notice, Plaintiff alleges that the Notice he received from Home Depot was deficient for the following reasons:

***First***, Plaintiff complains that the Notice failed to identify the plan administrator.   Compl. ¶¶ 52, 55 (citing 29 C.F.R. § 2590.606-4(b)(4)(i). However, there is no such requirement in the cited regulation. Instead, the regulation requires that the Notice identify the "party responsible under the Plan *for the administration of continuation coverage benefits.*" 29 C.F.R. § 2590.606-4(b)(4)(i (emphasis added). Indeed, the DOL's Model COBRA Notice (the "Model Notice")[5]

---

[5] The Court may take judicial notice of the DOL's Model Notice, which is attached hereto as **Ex. C.**

specifically allows listing *either* the Plan Administrator or, in the alternative, the party responsible for COBRA Administration.  *See* **Ex. C**.

**Second**, Plaintiff complains that the Notice "fail[ed] to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, including as to both the Plan Administrator and COBRA Administrator." Compl. ¶ 31, § (b).  As just explained, § 2590-606-4(b)(4)(i) does not require identification of the Plan Administrator. With respect to identification of the COBRA Administrator, the DOL's own Employee Benefits Security Administration ("EBSA") Employer's Guide to Group Health Continuation Coverage under COBRA (the "EBSA Guide", **Ex. D**),[6] merely instructs employers that a COBRA notice should identify "**someone** the employee and spouse can contact for more information on COBRA and the plan." EBSA Guide at p. 5 (emphasis added). In other words, the purpose of this notice requirement is to provide a contact point for more information on COBRA and the Plan.

Here, the COBRA Notice identifies the best point of contact for assisting with COBRA elections, the employee-facing department of Home Depot's third-party COBRA administrator, which is called the Benefits Choice Center (herein, "BCC").[7]  The BCC is identified 28 times in the COBRA Notice, its telephone number is provided 18 times, and its address is provided ten times.[8]  *See* **Ex. B**, *passim*. The Notice also provides the BCC's P.O. Box.  **Ex. B**, p. 11. Thus there can be no dispute that the Notice provided information for "someone the employee and spouse can contact for more information on COBRA and the plan," as directed by DOL's EBSA Guide.

---

[6] The Court may take judicial notice of the EBSA Guide.
[7] Third-party benefits administrators often use operating names such as "Employee Service Center," "Benefits Choice Center," or "HR Access Center" to make their association with the client-employer *less* confusing to the average plan participant.  However, the Notice also provides the actual name of the COBRA Administrator, **Alight Solutions,** at the footer of the first page of the COBRA Notice. **Ex. B,** Confirmation of Coverage, p. 1.
[8] The regulation requires an "address," it does not require a <u>physical</u> address. 29 C.F.R 2590.606-4(b)(4)(i). Given that elections are made either telephonically or electronically, the COBRA notice provides BCC's web address.

A side-by-side comparison of the DOL Model Notice and Home Depot's Notice demonstrates how closely Home Depot's Notice tracked the DOL's requirements, as each time the Model Notice identifies the "party responsible under the Plan for the administration of continuation coverage benefits," so does Home Depot's:

| Model Notice | Home Depot's Notice |
|---|---|
| **Can I extend the length of COBRA continuation coverage?**<br><br>If you elect continuation coverage, you may be able to extend the length of continuation coverage if a qualified beneficiary is disabled, or if a second qualifying event occurs. **You must notify [*enter name of party responsible for COBRA administration*] of a disability or a second qualifying event within a certain time period to extend the period of continuation coverage.** If you don't provide notice of a disability or second qualifying event within the required time period, it will affect your right to extend the period of continuation coverage. | **How can you extend the length of COBRA continuation coverage?**<br><br>If you elect continuation coverage, an extension of the maximum period of coverage may be available if a qualified beneficiary is disabled or a second qualifying event occurs. **You must notify the <u>Benefits Choice Center</u> of a disability or a second qualifying event within a certain time period in order to extend the period of continuation coverage**. Failure to provide notice of a disability or second qualifying event within the required time period you will lose your right to extend the period of continuation coverage. |
| **For more information**<br><br>This notice doesn't fully describe continuation coverage or other rights under the Plan.  More information about continuation coverage and your rights under the Plan is available in your summary plan description or from the Plan Administrator.<br>If you have questions about the information in this notice, your rights to coverage, or if you want a copy of your summary plan description, contact **[*enter name of party responsible for COBRA administration for the Plan, with telephone number and address*].** | **For More Information**<br><br>This notice does not fully describe continuation coverage or other rights under The Home Depot Plan. More information about continuation coverage and your rights under the Plan is available in your Benefits Summary or from the Plan Administrator.<br>If you have any questions concerning the information in this notice or your rights to coverage, you should **contact the <u>Benefits Choice Center at 800-555-4954.</u>** If you want a copy of your Benefits Summary, **<u>contact your store, log on at livetheorangelife.com, or call the Benefits Choice Center toll-free at 800-555-4954</u>** |

| Important Information About Payment | When and how must payment for COBRA continuation coverage be made? |
|---|---|
| *First payment for continuation coverage*<br><br>You must make your first payment for continuation coverage no later than 45 days after the date of your election (this is the date the Election Notice is postmarked).  If you don't make your first payment in full no later than 45 days after the date of your election, you'll lose all continuation coverage rights under the Plan.   You're responsible for making sure that the amount of your first payment is correct.  You may contact [***enter appropriate contact information, e.g., the Plan Administrator or other party responsible for COBRA administration under the Plan***] to confirm the correct amount of your first payment. | First Payment for Continuation Coverage<br><br>If you elect continuation coverage, you do not have to send any payment at the time you enroll by calling the Benefits Choice Center at 800-555-4954. However, you must make your first payment for continuation coverage not later than 45 days after the date of your election. If you do not make your first payment for continuation coverage, in full, not later than 45 days after the date of your election, you will lose all continuation coverage rights under the Plan. You are responsible for making sure that the amount of your first payment is correct. You will receive a Billing Notice confirming the amount of the payment. It is your responsibility to make your COBRA payments on time and in full. **Contact the Benefits Choice Center at 800-555-4954** if you have questions about your first payment. |

*Compare* **Exs. B and C**.

Accordingly, Home Depot properly identified the party responsible for COBRA administration pursuant to the regulation, and any allegation that Home Depot was required to provide identifying information beyond what was provided in the COBRA Notice is an invention of Plaintiff or his counsel.

***Third***, Plaintiff claims that the Notice did not adequately explain how to elect COBRA continuation coverage. Compl. ¶ 50. The regulations state that the notice should provide "[a]n explanation of the plan's procedures for electing continuation coverage," "written in a manner calculated to be understood by the average plan participant."  29 C.F.R. § 2590.606-4(b)(4) and (b)(4)((v). It is difficult to imagine an explanation more easily understood than "call this phone

number," which was one of the two options clearly stated in the Notice (the other being to log on to a website).

Plaintiff would have preferred that a physical, paper election form be included with the notice. Compl. ¶ 50. However, there is no regulation that requires a physical election form. *See* 29 C.F.R. § 2590.606-4(b)(4)(i)-(xiv) (setting forth the information required in COBRA notices). Plaintiff points to the DOL's Model Notice, which does contemplate including a written election form, but as already explained, use of the Model Notice is "not mandatory." *Id.* at § 2590.606-4(g).[9]  Nor is there any support for Plaintiff's suggestion that the Notice was required to contain "instructions on how to actually enroll if one calls the phone number, or when one visits the website." Compl. ¶ 47.  Plaintiff apparently argues for a script of what he should say if he had phoned the BCC, although nothing in the regulations requires that Home Depot provide such a script.[10]  Furthermore, had Plaintiff logged in to the benefits website after his qualifying event, he would have been automatically directed to a page[11] allowing him to make his election for continuation coverage.  But again, regardless of how easy Home Depot made election of coverage for its participants, 29 C.F.R. § 2590.606-4(b)(4)(v) imposes no additional requirements beyond

---

[9] An error or omission in a paper form, or in addressing the mailing of the form, or insufficient postage, can cause an otherwise effective *physical* election to be untimely, deficient, or otherwise ineffective.  In contrast, election by phone or online provides for near instantaneous election, contemporaneous identification and resolution of any errors in the application, and immediate confirmation that the election has been successful.

[10] Had Plaintiff contacted the BCC, he would have been presented with a specific menu option regarding COBRA. Upon choosing that option, he would have been automatically routed to a BCC representative who was specifically skilled in COBRA continuation coverage and who would have processed his election.  Even had Plaintiff chosen an incorrect menu option, all non-temporary BCC representatives are fully trained to process continuation coverage elections, and all temporary representatives are trained to transfer any misdirected COBRA-related calls to a COBRA specialist.

[11] Had Plaintiff attempted to elect coverage by logging on to the benefits website, he would have realized that Home Depot and its third-party COBRA administrator had made the online election of continuation coverage essentially foolproof.  As soon as a former associate logs on to livetheorangelife.com, he or she receives a pop-up "action needed" window that alerts them to elect COBRA if they choose, and then a series of prompts that walks the participant through the enrollment process.  The website includes a fully-staffed "chat" function for answering any questions regarding COBRA or election or continuation coverage.  If all else failed, Plaintiff could have contacted the BCC at the toll-free number that was provided 18 times in the Notice.

the straightforward instructions provided in Home Depot's COBRA Notice.

Plaintiff also alleges that he "failed to understand" the COBRA Notice he received, and that the Notice "fail[ed] to adequately explain the procedures for electing coverage, [which] prevented Plaintiff from understanding his rights under COBRA and how to make an informed decision about continuation coverage." Compl. ¶¶ 12, 46. However, he never alleges that he even attempted to follow the simple procedures described in the COBRA Notice, much less that he was unable to do so due to some specific lack of **required** information within the COBRA Notice. When boiled down to its essence, Plaintiff's claim is that he did not know how to make a phone call. Quite simply, Plaintiff's bald and conclusory allegation that the simple process described in the COBRA Notice for electing coverage confused him is insufficient to withstand dismissal. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Twombly,* 550 U.S. at 570.

**Fourth**, Plaintiff claims that the Notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to correctly identify the plan in which Plaintiff was enrolled. Again, Plaintiff is wrong. The first pages of the Notice specifically set out, in detail, the benefit plans in which Plaintiff was enrolled:

**Coverage That Ends**

| | Coverage End Date |
|---|---|
| **Medical Plan**<br>Option 2485 - Anthem BCBS Plus<br>Coverage Category 1 - Associate | 07-21-2019 |
| Tobacco - Free Status Associate: Yes<br>Tobacco - Free Status Spouse: No<br>Healthy Living Program Discount for You: Yes<br>Healthy Living Program Discount for Your Spouse :No | |

| | Coverage End Date |
|---|---|
| **Medical Payment Plan**<br>Option 0 - No Coverage | 07-21-2019 |
| **Dental Plan**<br>Option 207 - MetLife $1,000 Max<br>Coverage Category 1 - Associate | 07-21-2019 |
| **Vision Plan**<br>Option 6 - EyeMed Select $150<br>Coverage Category 1 - Associate | 07-21-2019 |
| **Critical Illness Protection Plan**<br>Option 0 - No Coverage | 07-21-2019 |

**Ex. B**, Confirmation of Coverage, pp. 1 -2.  The Notice leaves no doubt as to Plaintiff's coverage with respect to his Medical (Option 2485-Anthem BCBS Plus) and Dental Plan (Option 207 – MetLife $1,000 Max).  The Notice further provides:

If elected, COBRA continuation coverage will begin as listed below.

| Group Health Plan | Coverage End Date | COBRA Coverage Begin Date |
|---|---|---|
| Medical Plan | 07-21-2019 | 07-22-2019 |
| Dental Plan | 07-21-2019 | 07-22-2019 |
| Vision Plan | 07-21-2019 | 07-22-2019 |

**Ex. B**, p. 1.  Accordingly, the coverage in which Plaintiff was enrolled is properly identified in the Notice, and any assertion otherwise is baseless.

For the foregoing reasons, the Notice complied fully with COBRA's notice requirements, as set forth at 29 C.F.R. § 2590.606-4.

**C.     Alternatively, Home Depot's COBRA Notice *Substantially* Complies with COBRA's Notice Requirements.**

ERISA notices need only substantially comply with their governing regulations.  *See Perrino v. Southern Bell Tel & Tel. Co.,* 209 F.3d 1309, 1317-18 (11th Cir. 2000); *Counts v. American Gen. Life Ins. Co.,* 111 F.3d 105, 107 (11th Cir. 1997); *Cree v. Hartford Life & Acc. Ins. Co.,* 917 F. Supp. 2d 1296, 1317 (M.D. Ga. 2013).  While the Eleventh Circuit has not addressed this issue in the specific context of a COBRA election notice, there is no reason that the Court should deviate from the general rule the courts have consistently applied in ERISA notice cases.

Many of the ERISA notice cases arise in the context of denials of benefits. The regulation that establishes notice requirements in that context states that a plan administrator "**shall**" include in a notice of denial "[t]he specific reason or reasons for the adverse determination," [r]reference to the plan provisions on which the determination is based," and other specific information. 29 C.F.R. § 2560.503-1(g)(1) (emphasis added). Just like the COBRA notice regulations, the benefits

notice regulation states that the required information must be provided "in a manner to be understood by" the recipient. *Id.* Despite the mandatory wording of the regulation (the notice "shall" include the required information), courts have consistently held that strict compliance with the notice requirements is not required; rather, substantial compliance is sufficient. *See, e.g.*, *Counts v. American Gen. Life Ins. Co.*, *slip op.* No. 6:94-cv- 00055 (N.D. Ga. Dec. 13, 1994), *aff'd* 111 F.3d 105, 107 (11th Cir. 1997); *Disanto v. Wells Fargo & Co.*, No. 8:05-CV-1031-T-27MSS, 2007 U.S. Dist. LEXIS 62781, at *53 (M.D. Fla. Aug. 23, 2007) (citing *Counts*); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 689 (7th Cir. 1992)). Applying substantial compliance rather than strict compliance serves important purposes, including "protect[ing] a plan against financial loss from frivolous lawsuits and unnecessary judicial intervention." *See Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006); *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788-89 (4th Cir. 1995); *Hozier*, 908 F.2d 1155, 1160 (1990) (discussing "Congress's concern with minimizing employers' [ERISA] compliance costs")

Significantly, the regulations themselves and the DOL's Instructions to the Model Notice state that "good faith" compliance satisfies the notice content requirements. *See* DOL's Instructions to Model Notice, **Exhibit Ex. C**, p. 1(tracking the language of the Model Notice represent good faith compliance with the election notice content requirement of COBRA); 29 C.F.R. § 2590.606-4(g); **Exhibit Ex. D**, EBSA Guide p. 5 (same).  As the Complaint alleges, the applicable regulations require that the COBRA Notice be "written in a manner calculated to be understood by the <u>average</u> plan participant."  Compl. ¶ 11 (quoting 29 C.F.R. § 2590.606-4(b)(4).

On its face, the Notice at issue here meets this test.  The Notice provided clear and simple guidance for electing coverage.  Moreover, the Complaint does not allege that any plan participant other than Plaintiff failed to understand the COBRA Notice.  As discussed in Section II(B), above,

Home Depot's notice closely tracked the Model Notice so as to ensure that any qualified individuals or their beneficiaries were able to elect continuation coverage if they so chose, while also providing sufficient information to allow them to make an informed decision regarding their election of COBRA continuation coverage. That is the stated purpose of the COBRA notice requirement. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1230 (11th Cir. 2002) ("The notice must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage."). Home Depot's COBRA Notice provided two foolproof methods to instantaneously enroll in COBRA coverage, either by phoning the BCC's toll-free telephone number or by logging on to the Home Depot benefits website. In the event that a beneficiary had questions regarding his or her enrollment or COBRA, the Notice provided that the beneficiary was to contact the BCC, in full compliance with the regulation and the EBSA Guide. *See* 29 C.F.R. § 2590.606-4(b)(4)(i)-(ii); EBSA Guide p. 5 (requiring identification of "someone the employee and spouse can contact for more information on COBRA and the plan"). Home Depot also identified, with specificity, the Plan in which Plaintiff was enrolled during his employment with Home Depot and the dates his coverage were to end, absent election of continuation coverage. *See* Section II(B), above. Quite simply, Home Depot's COBRA Notice substantially complied with COBRA's notice requirements.[12]

## D.  Plaintiff Failed to Exhaust Administrative Remedies.

Even if the Notice was not sufficiently compliant (which it was), the Complaint should be dismissed because Plaintiff failed to exhaust administrative remedies before filing suit.

### 1.    Controlling Precedent Requires Exhaustion in Statutory Violation Cases.

---

[12] Furthermore, requiring strict compliance in the COBRA Notice context would also permit a potential participant to shortcut the exhaustion requirement and proceed directly to Court on otherwise non-material violations of 29 C.F.R. 2590.606-4, thus requiring that the Plan incur the undue expense of defending against lawsuits that were otherwise avoidable.

There is a conflict among the federal circuit courts concerning whether ERISA's exhaustion requirement applies only to contractual claims (such as a denial of a claim for benefits), or to both contractual claims and statutory claims such as this one, where a plaintiff alleges a violation of ERISA itself. *See Counts,* 111 F.3d at 109 (discussing inter-circuit conflict). There is, however, no <u>intra</u>-circuit conflict in the Eleventh Circuit. A plaintiff in the Eleventh Circuit is "<u>required</u> to exhaust administrative remedies" in an action alleging a violation of statutory ERISA rights. *Id.* (emphasis added).[13]  *See also Bickley,* 461 F.3d at 1330 (Eleventh Circuit "precedent makes clear that the administrative exhaustion requirement for ERISA claims should not be excused merely because a claim is brought pursuant to the statute") (citations omitted).

Requiring exhaustion in statutory cases is consistent with the principles the Eleventh Circuit has cited as supporting the exhaustion requirement:

> Compelling considerations exist for [requiring] plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by . . . plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Cont'l Gp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985) (citations omitted).

The Eleventh Circuit has characterized the requirement to exhaust administrative remedies in statutory violation cases as "controlling precedent." *Counts*, 111 F.3d at 109. It has also been referred to as an "absolute approach." *See Morales Cotte v. Cooperativa De Ahorro y Credito*

---

[13] The United States Supreme Court denied a petition for certiorari review in the seminal Eleventh Circuit case on this issue. *Mason v. Cont'l Gp., Inc.*, 763 F.2d 1219, 1226-27 (11th Cir. 1985) (exhaustion required in case "alleg[ing] violations of statutory rights under ERISA") (citations omitted), *cert. denied*. 474 U.S. 1087 (1986).  For a more recent decision, *see Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223-24 (11th Cir. 2008) (the "exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself") (citations omitted); *accord Merritt v. Confederation Life Ins. Co.*, 881 F.2d 1034, 1035 (11th Cir. 1989).

*Yabucoena*, 73 F. Supp. 2d 153, 160 (D.P.R. 1999).[14]  In fact, while recognizing narrow exceptions to the exhaustion requirement (in both contract and statutory claims) where exhaustion would be futile, the remedy inadequate, where a plaintiff reasonably interpreted the plan language as meaning that she could go straight to court with her claim,[15] or where the plaintiff is denied meaningful access to the administrative scheme in place,[16] the Eleventh Circuit has never recognized <u>any</u> exception to the exhaustion rule based on the <u>nature</u> of the alleged violation. Further, the Eleventh Circuit has "expressed a disinclination toward expansion of the exceptions to exhaustion[,] . . . appl[ies] the exhaustion requirement strictly[,] and recognize[s] narrow exceptions only based on exceptional circumstances." *McCay v. Drummond Co.*, 509 F. App'x 944, 947 (11th Cir. 2013) (citation omitted).

The Eleventh Circuit has never specifically addressed the precise issue of whether the exhaustion requirement applies to claims relating to COBRA notices, and there are few reported decisions on the issue.  Most of those decisions are from federal district courts in jurisdictions where circuit court precedent has established that exhaustion is <u>not</u> required for statutory ERISA claims, most involved an absolute failure to provide a timely COBRA notice, and most were in cases where there were no available administrative remedies.  Those cases therefore are not persuasive here, because exhaustion <u>is</u> required for statutory claims in the Eleventh Circuit,

---

[14] Plaintiff is expected to argue that he was not required to exhaust administrative remedies because his claims arise under the statute, and therefore do not implicate the Plan.  Any such argument is patently absurd.  Obviously, the statute is implicated only because Plaintiff was covered under the Plan.  Further, as just explained, the Eleventh Circuit has consistently held that exhaustion is required for statutory claims.

[15] *See McCay v. Drummond Co.*, 509 F. App'x 944, 946 (11th Cir. 2013) (affirming summary judgment to employer based on former employee's failure to exhaust administrative remedies with respect to his appeal of a denial of disability benefits, and refusing to extend exceptions to the exhaustion requirement beyond: (1) futility, (2) inadequate remedy, or (3) explicit language in the plan documents providing that plaintiff could procced directly to court with his claim.)

[16] *Bickley*, 461 F. 3d at 1328.

because the Complaint concedes that Plaintiff did receive a timely COBRA notice, and because, as explained in detail below, in this case there were available administrative remedies.

The undersigned is aware of only one COBRA notice case, from a district court within the Eleventh Circuit, where – as here – administrative remedies were available, which decided the specific issue of whether a plaintiff is required to exhaust administrative remedies.  In that case, the Court held that exhaustion **is** required, and dismissed plaintiff's claim on summary judgment. *Cheney v. IPD Analytics, L.L.C.*, No. 08-23188-CIV-MORE, 2009 U.S. Dist. LEXIS 134753, at *26-27 (S.D. Fla. May 28, 2009), *adopted by Calkins v. IPD Analytics, LLC*, 2009 U.S. Dist. LEXIS 134755 (S.D. Fla., July 9, 2009).  A second case seemed to agree that exhaustion is required in a COBRA notice case, but denied a motion to dismiss based on failure to exhaust as "premature."  *Gilbert v. Suntrust Banks, Inc.*, No. 15-80415-Civ-Bran, 2015 U.S. Dist. LEXIS 185375, at *5 (S.D. Fla. Sep. 18, 2015).[17]  In at least two other cases within this Circuit, ERISA notice claims have also been dismissed for failure to exhaust.  *See Bojorquez v. E.F. Johnson Co.*, 315 F. Supp. 2d 1368, 1376 (S.D. Fla. 2004) (granting summary judgment in ERISA notice case for failure to exhaust administrative remedies); *Cinotto v. Home Depot Air Lines*, *Inc.*, No. 1:09-cv-01739-JOF, 2010 U.S. Dist. LEXIS 152583, at *33 (N.D. Ga. Sep. 10, 2010) (dismissing ERISA notice claim for failure to exhaust administrative remedies).

There are also two COBRA notice cases within this Circuit where a defendant moved to dismiss for failure to exhaust, but failed to identify any available administrative remedy.  Of course, in the absence of any available remedy, exhaustion would be futile, and as one would expect, those courts did not require exhaustion.  *See Delaughter v. ESA Mgmt., LLC*, No. 8:16-cv-3302-MSS-AEP, 2018 U.S. Dist. LEXIS 227921, at *8 (M.D. Fla. Mar. 20, 2018) ("ESA does not

---

[17] Dismissal would not be premature here, because by (falsely) asserting that there were no administrative remedies available, Plaintiff's Complaint negates any assertion that Plaintiff exhausted administrative remedies.

identify any administrative process Plaintiff could have pursued to vindicate her claim"); *see also Vazquez v. Marriott Int'l, Inc.*, No. 8:17-cv-116-T-35MAP, 2017 U.S. Dist. LEXIS 216265, at *5 (M.D. Fla. Aug. 25, 2017) (without any administrative remedies to exhaust, exhaustion would appear to be an inadequate remedy, or futile). *Delaughter* warrants further discussion, because of the alternative basis for the decision. Specifically, after noting that defendant had cited no cases requiring the exhaustion of administrative remedies for a claim alleging a defective COBRA notice, the Court cited and followed four cases from district courts within other circuits. 2018 U.S. Dist. LEXIS 227921, at 9. In each of those cases, however, unlike the case at bar, the defendant either had failed to give timely notice, or failed to give any notice at all. *See id.* and cases cited therein.

Therefore, *Delaughter* and *Vazquez* are readily distinguishable from this case. Instead, this case is more like *IPD Analytics* and, more importantly, this case falls squarely within the "controlling precedent" established by the Eleventh Circuit, which requires exhaustion in statutory ERISA claims, subject only to limited exceptions that <u>were</u> applicable in *Delaughter* and *Vazquez*, but which <u>are not</u> applicable here.

The fact that Plaintiff alleges that the COBRA Notice was defective is of no moment. This Circuit's "prior precedent makes clear" that ERISA's exhaustion requirement "should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy." *Perrino*, 209 F.3d at 1317[18] (citing *Counts*). Accordingly, the exhaustion requirement applies (a) even where the very document that sets out the administrative remedies allegedly fails to contain information required by ERISA, (b) even "despite the employer's noncompliance with the ERISA

---

[18] *Superseded in other part by* 29 C.F.R. § 2560.530-1(l), *as explained by Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300 (M.D. Fla. 2009).

notice provision," (c) even where the employer failed to promulgate any summary plan description, and (d) even where the employer fails to "delineat[e] a formal claims procedure."  *Perrino*, 209 F.3d at 1316-18 (citations omitted), *accord Counts*, 111 F.3d at 107 (exhaustion required even though employer's notice to plaintiff failed to comply with ERISA notice requirements). "Therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme," even "where an employer is technically noncompliant with ERISA's procedural requirements." *McCay* at 947 (citation omitted).

Notably, the exhaustion requirement must be satisfied before filing a federal suit.  *See McCay* at 947, *Bickley,* 461 F.3d at 1328; *Counts*, 111 F.3d at 108 (affirming summary judgment where plaintiff failed to exhaust before filing suit); *GVB MD, LLC v. United Healthcare Ins. Co.*, No. 19-20727-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 80359, at *10 (S.D. Fla. May 9, 2019) (dismissing where complaint failed to allege that plaintiff exhausted administrative remedies prior to filing suit).

### 2.    Administrative Remedies Were Available.

Despite the conclusory allegation in the Complaint that "Defendant had in place no administrative remedies that Plaintiff was required to exhaust prior to bringing suit," Compl. ¶ 39, the record leaves no doubt that administrative remedies were available to Plaintiff, including remedies for claims of statutory violations.  Administrative remedies were provided by the Plan, by the express incorporation into the Plan of the administrative remedies stated in Home Depot's Benefits Summary, which is the Summary Plan Description for the Plan,[19] and by the COBRA notice itself (hereinafter the "Plan documents").

---

[19] *See,* e.g.; 2019 SPD, **Ex. E**., p. 342 (defining the Benefits Summary as the "summary plan description"), 2020 SPD, **Ex. F**., p. 341 (same).

In fact, after joining in his initial lawsuit against Home Depot in the case of *Travis Mendiola v. Home Depot U.S.A., Inc., et al.,* Case No. 8:20-cv-0850-TPB-CPT (M.D. Fla.) (referred to hereinafter as the "First Lawsuit")[20] against Home Depot on June 10, 2020, and while that suit remained pending, Plaintiff acknowledged that administrative remedies were available by sending a letter to Home Depot's Plan Administrator attempting to invoke said remedies.  **Ex. G**. Plaintiff's claim was denied because controlling precedent in the Eleventh Circuit requires exhaustion of administrative remedies *before* filing suit.  **Ex. H**.[21]

### i.    *The Plan Provides Administrative Remedies.*

The Plan itself provides administrative remedies.  First, according to the Eleventh Circuit, an ERISA plan establishes administrative remedies sufficient to require exhaustion <u>for statutory claims</u> simply by providing that the administrator "has the *exclusive* responsibility and *complete discretionary authority* to control the operation and administration of the Plan, with all power necessary to *. . . resolve all interpretive . . . questions* that shall arise in the operation and administration of this Plan."  *Bickley*, 461 F.3d at 1329 (11th Cir. 2006) (terms italicized to allow ready comparison to Home Depot's Plan).   Home Depot's Plan provides that the Plan Administrator has: "*complete control* of the administration of the Plan, with *all discretionary authority to interpret* the Plan and to carry out its duties and discharge its responsibilities under the Plan,"[22] "the power to establish and enforce any written rules, regulations or procedures to

---

[20] The First Lawsuit asserted the same claims regarding the COBRA Notice.

[21] Here, Plaintiff failed to apprise the Court that he, in fact, attempted to exhaust administrative remedies (albeit only after joining in his First Lawsuit), and instead falsely alleged that no administrative remedies were available. Inaccurate pleading cannot save Plaintiff's claims, as the Eleventh Circuit has made clear that when there is a conflict between the allegations in a complaint and the exhibits properly before the Court on a motion to dismiss, the exhibits control.  *Griffin Indus.,* 496 F.3d at 1206. Furthermore, the Court is free to consider the Plan and related administrative documents when deciding the Motion to Dismiss without converting it to a motion for summary judgment, as there is no dispute as to the Plan documents' authenticity, the Complaint necessarily relies on the Plan documents, and the Plan documents are central to Plaintiff's Complaint. *See Day*, 400 F.3d at 1276; *Turner*, 2016 U.S. Dist. LEXIS 132113, at *12-14 n.4.

[22] **Ex.A**, Plan Article 7, § 7.1(a).

administer the Plan,[23] the power to "*decide all questions* concerning the Plan,"[24] and the sole discretion "*[t]o decide all questions of eligibility.*"[25] Under *Bickley*, this broad reservation of discretionary and exclusive authority to interpret the plan, by itself, constitutes sufficient administrative remedies to require exhaustion, before a lawsuit claiming a statutory violation.

Second, the Plan expressly states that exhaustion is required prior to any legal action arising under the Plan:

> 5.2    Exhaustion of Remedies.   No lawsuit with respect to any benefit payable or other matter arising out of or relating to any benefit under the Plan may be brought by a Covered Person before exhaustion of the appeal procedures set forth in the Summary Plan Description.  The review procedures described in this Article V are the exclusive procedures under the Plan.  Any lawsuit must be filed no later than one year after the earlier of the date the Covered Person's claim arises or the date the claim is denied.[26]

Third, the Plan specifically incorporates the administrative procedures set forth in the Summary Plan Descriptions, which provide as follows with respect to Home Depot's Medical and Dental Plan:

> You must exhaust the Plan's claims and appeals procedures (but not including any voluntary level of appeal) before filing a lawsuit or taking any other legal action against the Plan.
>
> …
>
> If you fail to exhaust the Plan's claims and appeal procedures, you will be precluded from filing suit even if you attempt to file within the time frame provided above.

**Ex. E** (2019 SPD), pp. 311, 317, 320, 322, 329; **Ex. F** (2020 SPD), pp. 311, 317, 320.  In addition, each SPD also has a catch-all "Limitations of Actions" provision which provides similar language.

---

[23] *Id.* § 7.1(a)(1).
[24] *Id.* § 7.1(a)(7).
[25] *Id.* § 7.1(a)(2)(emphasis added).
[26] *Id.* Article V, § 5.2.

**Ex. E**, p. 336, **Ex. F**, p. 335.

          ***ii.***       ***The COBRA Notice Provides Still More Administrative Remedies.***

      The Eleventh Circuit has cited a description of administrative remedies in an ERISA notice when affirming summary judgment based on failure to exhaust.  *See Counts*, 111 F.3d at 107-09 (defendant "sent Counts a written termination letter which informed him of its decision and of his right to appeal within 60 days. Counts took no action during the 60 days").  Here, the COBRA notice that Plaintiff admits he timely received offered an administrative remedy for the exact problem alleged in the Complaint.

      Plaintiff claims that he did not understand the procedures for electing continuation coverage.  The COBRA Notice, <u>more than a dozen times</u>, explains exactly what someone should do if she or he has questions, directing the plan participant to contact the COBRA Administrator by calling the BCC.  In fact, the very first text on the very first page of the COBRA Notice provides both the phone number and operating hours of the BCC, through which COBRA benefits are administered.  **Ex. B**, p. 1.

      It could not have been easier.  <u>Eighteen times</u> the COBRA Notice provides the phone number for the BCC, which Plaintiff could have contacted if he had any questions about the notice he received.  *See* generally **Ex. B**.  In addition, the explanation of the election process in the COBRA Notice could not have been any clearer, or any simpler:

> **Enrollment**[:]To enroll in COBRA coverage, log in at livetheorangelife.com or call the Benefits Choice Center toll free at **800-555-4954** no later than **September 23, 2019**.  **If you do not enroll in that time frame, you forfeit your rights to COBRA coverage.**

**Ex. B**, COBRA Enrollment Notice p. 2 (<u>emphasis in original</u>).  The COBRA Notice also provided that if a plan participant needed any further information about the Notice or their rights therein,

they could contact the COBRA Administrator at the number provided.  **Ex. B**, COBRA Enrollment Notice pp. 6, 16.

Repeating: Plaintiff's sole complaint is that he was confused about the continuation coverage rights set forth in the COBRA Notice, but the COBRA Notice itself provided an opportunity to address any confusion by providing the COBRA Administrator's contact information more than a dozen times, and directing the reader to call if they had any questions about the Notice.   In other words, Plaintiff was provided clear and repeated notice of an administrative process that was tailored to the specific issue that forms the basis for his lawsuit. Therefore, and for the other reasons cited in Sections II(D)(1) – (2), above, Plaintiff cannot escape the fact that he was provided administrative remedies, which he was required to exhaust *prior to filing suit.*

> **3.     The Available Remedies Were Not Inadequate, There Is No Reason to Believe Exhaustion Would Have Been Futile, and the Plan Language Could Not Reasonably Be Interpreted as Meaning that Plaintiff Could Go Straight to Court.**

The numerous administrative remedies afforded to Plaintiff were more than adequate.  As explained, his complaint is that he did not understand how to elect COBRA coverage.  The notice itself, several times, told him what to do if he had questions – contact the BCC.

There is no reason to think that exhaustion would have been futile, because there is no reason to doubt that the BCC would have walked Plaintiff through the election process.  If Plaintiff had bothered "to take the most rudimentary administrative steps to obtain [his] benefits," *Harrison v. United Mine Workers 1974 Ben. Plan & Tr.*, 941 F.2d 1190, 1193 (11th Cir. 1991), he likely would have been approved for continuation coverage.[27]  Had coverage been denied at that point,

---

[27] Under *Harrison*, Plaintiff's failure to seek continuation coverage was, itself, a failure to exhaust administrative remedies.  *See* 941 F.2d at 1193 ("the appellants failed to take the most rudimentary administrative steps to obtain their benefits.  The appellants never submitted [an] application[] for benefits to the Plan, and . . . never formally

Plaintiff could have utilized the appeal rights explicitly set forth in the Plan and explained in detail in the applicable Summary Plan Descriptions.  However, Plaintiff failed to take any of those steps before filing a lawsuit, and thereby violated the terms of the Plan.  Indeed, the Complaint does not allege exhaustion, but rather alleges administrative remedies were not available, an assertion that is conclusively refuted in the record properly before the Court on this Motion to Dismiss, and in Plaintiff's own letter attempting to invoke administrative remedies after he had already joined in the First Lawsuit. **Ex. G.** Due to Plaintiff's failure to exhaust the administrative remedies established by the Plan prior to bringing suit against Home Depot, this case should be dismissed.[28]

### 4. The Failure to Exhaust Prior to Filing His Initial Lawsuit Is Substantially Prejudicial.

Allowing Plaintiff to proceed despite his failure to exhaust administrative remedies would cause substantial prejudice to the Plan.  First, because Plaintiff failed to timely pursue administrative remedies, the plan administrator has been deprived of the opportunity to remedy the alleged deficiencies without the costs and burdens of litigation.

Second, in cases such as this, where the plaintiff was required to exhaust administrative remedies before filing suit, judicial review is limited to the administrative record. *Lee v. Blue*

---

petitioned the Plan . . . to determine . . . eligibility . . . .  Under these circumstances it is simply indisputable that [they] failed to exhaust [their] administrative remedies as required under the law of this Circuit.").  These principles apply as well where there is a failure to apply for COBRA continuation coverage. *See Martin v. Ingersoll-Rand Co.*, Civ. No. 2:93-CV-169-WCO, 1995 U.S. Dist. LEXIS 18388, at *20 (N.D. Ga. Sep. 28, 1995) (rejecting futility argument and entering summary judgment, based on failure to exhaust internal administrative remedies, where beneficiaries failed to apply for continuation coverage) (citing *Springer*, 908 F.2d at 899).

[28] Even assuming that futility had been alleged, federal courts generally only apply the futility exception where the administrator takes deliberate action to block or otherwise impede a beneficiary's proper access to the administrative scheme. *McCay*, 509 F. App'x at 949 (11th Cir. 2013) (reasoning that the Eleventh Circuit had previously found that the futility exception applied when "plan administrators had denied a participant meaningful access to administrative proceedings by repeatedly ignoring requests for documents supporting the denial of benefits") (citing *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990). "[B]are allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement." *Bickley* 461 F.3d at 1330 (dismissing ERISA action for failing to exhaust administrative remedies, and further stating that "our precedent makes clear that the administrative exhaustion requirement for ERISA claims should be not be excused merely because a claim is brought pursuant to the statute") (citing *Springer*, 908 F.2d at 901 and *Perrino*, 209 F.3d at 1315 n.6).

*Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir. 1994); *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).  Because of Plaintiff's failure to timely exhaust, the only administrative record is the untimely invocation of administrative remedies and the subsequent denial on that basis (**Exs. G and H**).[29]  Accordingly, the Plan (and the Court) are deprived of an administrative record for review.[30]

Third, where, as here, a plan reserves discretionary authority to a plan administrator, the administrator's determinations are reviewed under an arbitrary and capricious standard.  *See Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997); *Marecek v. Bellsouth Services, Inc.*, 49 F.3d 702, 705 (11th Cir. 1995).  With Plaintiff's failure to timely exhaust administrative remedies and the resulting absence of any administrative determinations on the merits, the Plan loses the benefit of application of the arbitrary and capricious standard.

Administrative remedies were made available (1) directly by the Plan, (2) in the Summary Plan Descriptions, and (3) in the COBRA Notice itself.  Plaintiff failed to take any timely steps to exhaust those available remedies. Because the Eleventh Circuit <u>requires</u> exhaustion of remedies in statutory ERISA cases prior to bringing suit, the Complaint must be dismissed.

**E.**     <u>**Plaintiff Lacks Article III Standing**</u>

"To ensure the presence of a 'case' or 'controversy,' [the Supreme] Court has held that Article III requires, as an irreducible minimum, that a plaintiff allege (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (citation omitted).  A

---

[29] Because Plaintiff's attempt to invoke administrative remedies was untimely, the merits were never reached at the administrative stage.

[30] Alternatively, the scope of review in this lawsuit should be limited to Plaintiff's untimely attempt to invoke administrative remedies and the rejection of that attempt as untimely (issues which are particularly individual in nature, and do not extend to any putative class).

plaintiff cannot establish an injury based on a "bare procedural violation, divorced from any concrete harm." *Spokeo v. Robins,* 136 S. Ct. 1540, 1549 (2016); *see also Nicklaw v. CitiMortgage, Inc.,* 839 F.3d 998, 1000-1003 (11th Cir. 2016).  Circuit courts outside the Eleventh Circuit have applied the holding in *Spokeo* with respect to purported ERISA violations.  *See, e.g.*, *Sohnlen v. Fleet Owners Ins. Fund,* 844 F.3d 576 (6th Cir. 2016) (plaintiffs did not have standing where they failed to show precisely what harm they suffered due to Defendants' purported violations of ERISA); *Lee v. Verizon Communications, Inc.,* 837 F.3d 523, 530 (5th Cir. 2016).

Plaintiff states in conclusory fashion that the deficiencies in Home Depot's COBRA Notice caused "economic injuries in the form of lost health insurance and unpaid medical bills," as well as an "informational injury as a result of Defendants' failure to provide him with all of [the] COBRA information he was entitled to by law."  Compl. ¶ 2.  Even assuming that this was sufficient to establish a concrete injury for purposes of the Motion to Dismiss, which Home Depot denies, Plaintiff makes no attempt to plead *how* the purported deficiencies in Home Depot's COBRA Notice *caused* him to lose his health insurance or have unpaid medical bills, i.e., he fails to allege that his alleged injury is "fairly traceable" to the alleged deficiencies in the Notice.

There can be no dispute that the COBRA Notice clearly explained that to elect coverage, Plaintiff should call the BCC or log on to its website.  The BCC was identified, together with its phone number and web address, more than a dozen times in the COBRA Notice.  There is no allegation – nor could one be made consistent with Rule 11 – that any of the alleged deficiencies with the COBRA Notice prevented or materially interfered with Plaintiff's opportunity to make a phone call, or to log on to a website.  Plaintiff does not allege that he contacted the BCC but was unable to elect coverage, that the COBRA Notice provided incorrect contact information for the BCC, or that the COBRA Notice set forth inaccurate information that somehow led to a failed

election.  Again, the simple and undisputed fact is that the COBRA Notice told Plaintiff that all he needed to do if he wanted to elect coverage was to call the BCC or to log on to its website, but he never did either, does not allege that he did either, and does not make any allegation that any purported deficiency with the COBRA Notice prevented him from doing so.

Plaintiff was required to plead sufficiently detailed *facts* to raise the right to relief – including that he has standing – above a speculative level, and "naked assertions" devoid of "further factual enhancement" are insufficient to satisfy this pleading obligation.  *Iqbal*, 556 U.S. at 678-79 (quoting *Twombly,* 550 U.S. at 570).  In fact, in a recent case brought by Plaintiff's counsel involving nearly identical claims Magistrate Judge Jonathan Goodman found, at the certification stage, that none of the three named plaintiffs could establish either a concrete or informational injury sufficient to confer Article III standing.  *Jamie Bryant v. Wal-Mart Stores, Inc.,* Case No. 1:16-cv-24818-JEM (S.D. Fla. July 15, 2020), Report and Recommendation at pp. 23-41 (attached hereto as **Ex. I**).  Therefore, if Plaintiff's Complaint is not dismissed with prejudice on the grounds set forth in Sections II(B)-(D), above, the Complaint is subject to dismissal for the reasons set forth in this Section II(E).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Home Depot respectfully requests that the Court issue an Order: dismissing the Complaint, with prejudice, pursuant to Rule 12(b)(1) and (6).

Respectfully submitted,

FORDHARRISON LLP

By: <u>*/s/ Shane T. Muñoz*</u>
     Shane T. Muñoz, Esq.
     Florida Bar No. 0067024
     smunoz@fordharrison.com
     Nicholas S. Andrews, Esq.
     Florida Bar No. 0105699

nandrews@fordharrison.com
101 East Kennedy Boulevard, Suite 900
Tampa, Florida 33602-5133
Telephone:  (813) 261-7800
Facsimile:  (813) 261-7899
Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Shane T. Muñoz
Attorney

WSACTIVELLP:11776075.1