**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

TRAVIS MENDIOLA, *individually*
*and on behalf of all others*
*similarly situated*,

      Plaintiff,

v.                                                  CASE NO:  1:20-CV-04027

HOME DEPOT U.S.A. INC., et al.,

      Defendants.
_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS**
**ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

      Plaintiff, Travis Mendiola ("Mendiola" or "Named Plaintiff"), Home Depot

U.S.A. Inc. ("Home Depot") and The Administrative Committee of Home Depot

U.S.A., Inc. (the "Committee")[1] (collectively the "Parties"), hereby request that

this Court enter an order (a) granting preliminary approval of the Parties' class

action settlement;[2] (b) preliminarily certifying the proposed settlement class; (c)

designating Mendiola as the settlement class representative and his attorneys as

class counsel; (d) approving the form and manner of class notice; (e) authorizing

---

[1] Home Depot and the Committee are hereinafter referred to as "Defendants".

[2] The Class Action Settlement Agreement is attached as Exhibit "B".

the settlement administrator to disseminate a notice of settlement to the settlement class members; (f) setting a deadline to opt out or object; and (g) scheduling a final approval hearing no earlier than ninety (90) days after this Court's Preliminary Approval Order.

As explained further below, with the assistance of highly-respected mediator Carlos Burruezo, Esq., the Parties have reached a tentative class-wide resolution for which they now seek Court approval. Specifically, the proposed settlement provides for settlement payments to be made to approximately 44,205 class members. Defendants will create a common fund for class members consisting of a maximum of $815,000.00. Class members submitting claims will receive a *pro rata* amount of the settlement fund.[3] These amounts are consistent with COBRA class action settlements approved by other federal courts in the Eleventh Circuit.[4] In sum, the Parties respectfully submit that the proposed settlement is fair,

---

[3] Gross payments to class members are expected to be approximately $18.44. $815,000.00/44,205 = $18.44. Net payments to class members are expected to be approximately $10.71. $815,000.00 - $271,666.66 (attorneys' fees) - $5,000 (litigation costs) - $65,000.00 (settlement admin costs) = $473,333.34 / 44,205 = $10.71.

[4] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00) in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32.00 and net of $11.00); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24.00 and net of $13.00).

reasonable, and adequate and ask that it be approved accordingly. It was reached at arm's length negotiations conducted by experienced practitioners and with the assistance of mediator Carlos Burruezo. A proposed Order is attached as Exhibit "A". In further support thereof, the Parties state the following:

## I.    BACKGROUND AND OVERVIEW OF SETTLEMENT.

On July 9, 2020, Plaintiff filed a Class Action Complaint against Defendants in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). In his Complaint Named Plaintiff alleged Defendants violated the COBRA notice requirements by providing him and the putative class members whom he seeks to represent with a deficient COBRA notice ("COBRA Notice") in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendants.

The settlement provides for settlement payments to be made to approximately 44,205 class members. Defendants will create a common fund for

class members consisting of a maximum of $815,000.00 ("Common Fund").[5]  If the requested amounts are granted for attorneys' fees, costs, and administrative expenses, the parties anticipate that each Class Member who submits a claim will receive a net payment of approximately $10.71. *See* note 4, *supra*.  Given the size of the class, this net amount is consistent with COBRA class action settlements that have been approved by other federal courts.

The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

**A.    Allegations included in Named Plaintiff's Complaint.**

This is a putative class action brought by Named Plaintiff against Defendants under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendants provided Named Plaintiff and other class members with a deficient COBRA Notice.  More specifically, Named Plaintiff asserted that Defendants' COBRA Notice did not adequately inform him how to exercise his rights to elect COBRA coverage because the Notice failed to: (i) identify the Plan Administrator; and, (ii) was not written in a manner calculated to

---

[5] The Common Fund will be capitalized on a "claims made" basis.  However, for purposes of assessing attorneys' fees, costs, and settlement administration costs, the total capitalization of the Common Fund will be considered to be the $815,000.00—the maximum amount to be paid by Defendants if all Class Members were to submit claims.

be understood by the average plan participant, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq.* As a result of the alleged violations in the Complaint, Named Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of himself and all others similarly situated.

This Action was initially brought in the United States District Court for the Middle District of Florida, Tampa Division. On August 3, 2020, Defendants filed their 28 U.S.C. § 1404 Motion to Transfer Venue. (Doc. 13). On September 24, 2020, Defendants filed their Motion to Dismiss Plaintiff's original Complaint. (Doc. 32). On September 30, 2020, the action was transferred to this Court. (Doc. 34). On October 6, 2020, Named Plaintiff amended his complaint (Doc. 39), after which Defendants again moved to dismiss the action. (Doc. 71). The parties also engaged in significant written discovery. On March 1, 2021, Named Plaintiff moved for class certification. (Doc. 69). That same day, the parties attended mediation with Mr. Burruezo. No settlement was obtained at mediation. However, after over a month of continuing and often contentious negotiations with Mr. Burruezo serving as the intermediary, the parties reached a settlement in principle. The parties have documented and negotiated the finer points of settlement, memorialized in the class action settlement, for which they now seek court approval.

**B.**    **Defendants' Defenses.**

Had mediation been unsuccessful, Defendants had available to it a myriad of defenses to Named Plaintiff's allegations, including Article III standing arguments based on *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016) and its progeny. Defendants deny, and continue to deny, that they violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class.  In fact, as part of the Settlement Agreement, Defendants specifically deny that they engaged in any wrongdoing, do not admit or concede any actual or potential fault, and deny any wrongdoing or liability in connection with any facts or claims that have been alleged against them in the Action.  Defendants also deny that the claims asserted by Named Plaintiff are suitable for class treatment.  The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendants, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendants agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

**C.**    <u>**Settlement Negotiations and Mediation**</u>.

The Parties attended an all-day mediation before a highly-respected mediator, Carlos Burruezo, on March 1, 2021.  After extensive arm's length negotiations between experienced counsels for a full day with no deal reached, the Parties opted to continue negotiations after mediation concluded (but still with Mr. Burruezo's assistance).  After further negotiations, on April 15, 2021, the parties reached a settlement in principle.

As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement"), attached hereto as Exhibit "B", for which they now seek Court approval.  The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon this litigation as to the Named Plaintiff and all putative class members.

**II.**    <u>**THE PROPOSED SETTLEMENT**</u>.

**A.**    <u>**The Proposed Settlement Class**</u>.

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants in the Home Depot Medical and Dental Plan/The Home Depot Group Benefits Plan (the "Plan") to whom, as a result of a qualifying event, a COBRA Notice was addressed and sent from July 9, 2019 through September 20,

2020 as determined by Home Depot's records, and did not elect continuation coverage." (Referenced herein as the "Settlement Class").

**B.    Benefits to the Settlement Class and Named Plaintiff.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendants' agreement to pay a maximum amount of $815,000.00 to the Common Fund, depending on the number of Class Member claims submitted.  The parties negotiated the case on a common fund basis, meaning that the settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and administrative expenses.  The parties did not reach agreement on attorneys' fees until after all terms related to payments to class members, and the class definition, were agreed upon.

With the Settlement Class comprised of approximately 44,205 members, each Settlement Class member who does not opt-out of the settlement will receive a gross settlement payment of $18.44.  This is a "claims made" settlement. Settlement Class members will be required to submit claim forms to receive a share of the settlement proceeds.  The agreed-upon claims process makes it easy for class members to submit claims – claims can be submitted by mail or by submitting a claim through the settlement website.  If the requested amounts are

granted for attorneys' fees, costs, and administrative expenses, the parties anticipate that each Class Member will receive a net payment of approximately $10.71.

The Settlement Agreement also provides that Plaintiff's Counsel's fees are to come out of the fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, plus costs, limited to those defined by Rule 54 of the Federal Rules of Civil Procedure and fees paid by Named Plaintiff to the Mediator, not to exceed $5,000.00 in total. Neither settlement approval nor the size of the settlement fund is contingent upon the full amount of any requested fees or costs.

The Named Plaintiff is not seeking compensation for his service to the Settlement Class. However, Named Plaintiff, a nine-year employee, is receiving compensation as consideration for executing a General Release and agreeing not to seek re-employment with Defendant. (Exhibit "C").

C.    **Administration of Notice.**

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC ("Settlement Administrator"), to administer notice and to manage the Common Fund in this case. The Parties have also agreed that all

fees and expenses charged by the Settlement Administrator shall be paid from the Common Fund.

Within twenty one (21) days of the Court's preliminary approval of the Settlement Agreement, the Settlement Administrator shall mail the Notice Form, attached to the Settlement Agreement, by U.S. mail to all Settlement Class members.  The Notice Form shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class members' eligibility to recover their pro-rata portion of the settlement proceeds, and will include an explanation of the "claims made" process, as well as an explanation as to what happens if the settlement checks are not timely cashed.  The Notice will also direct recipients to the Settlement website for additional information.

The Settlement website shall contain information about the Settlement and claims process, including: (1) a copy of the Settlement Agreement; (2) Settlement Class members' right to object and how to do so within forty-five (45) days; (3) their right to exclude themselves by opting out and how to do so within forty-five (45) days; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least ninety (90) days after the required CAFA notices have

gone out); and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Settlement Class members who choose to opt out or object to the settlement may do so within forty five (45) days of the Notice mailing date.

If the Court grants final approval of the settlement, Defendant will transfer designated amounts to the Common Fund administered by the Settlement Administrator within ten (10) days of the Court's Order. Settlement checks will be mailed to all Settlement Class members within ten (10) days after receipt by the Settlement Administrator of the Common Fund monies. To the extent any money remains in the fund after these distributions and after Settlement Class members have had sixty (60) days to cash their settlement checks, such monies shall revert to Defendant.

### D.    **Attorneys' Fees and Expenses.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for (1) up to one-third of the common fund as attorneys' fees, plus (2) costs limited to costs as defined by Rule 54 of the Federal Rules of Civil Procedure plus amounts actually paid by Named Plaintiff to the Mediator, but limited to no more than $5,000.00 in total. Class Counsel will file a separate

motion seeking approval for fees and costs at least fourteen (14) days prior to the class member's objection deadline.  Defendants do not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total fund, plus costs as defined above, not to exceed $5,000.00.

### E.    Class Action Fairness Act Notice.

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

### III.    THE SETTLEMENT MEETS THE REQUIREMENTS OF RULE 23(e) FOR APPROVAL.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members.  This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments

and evidence may be presented in support of, or in opposition to, the settlement. *Id*. The decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter an order preliminarily approving the Class Action Settlement Agreement.

### A.    The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Travis Mendiola and the undersigned have adequately represented the class.    This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met.  The Named Plaintiff, Travis Mendiola, is adequate given that his interests are equivalent to those of the Settlement Class.  There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class.  The Named Plaintiff has the same interest as the Settlement Class members in prosecuting his claims.  He, along with his counsel, secured an $815,000.00 settlement from highly sophisticated Defendants in favor of the class members he seeks to represent.

With respect to Class Counsel, as demonstrated in the attached declarations, the proposed attorneys have extensive class action experience, and have been

appointed as class counsel in many, many class action cases, including the following recent COBRA class action cases: *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc*., M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc*., M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63); *Silberstein v. Petsmart*, Inc., Case No.: 8:19-cv-02800-SCB-AAS (M.D. Fla. Dec. 4, 2020) (Doc. 38).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C*., 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g.*, *UAW v. Ford Motor Co*., 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant

weight, and supports the fairness of the class settlement."). Thus, the proposed settlement satisfies Rule 23(e)(2)'s first component, adequacy.

**B.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected by the parties and approved by the Court. (Doc. 30).   This also weighs in favor of approval. *See Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length— and extended—negotiations between the Parties and their counsel.   The Parties participated in mediation with Mr. Burruezo at great expense to both sides and with no promise Plaintiff's counsel would recover anything at all.   The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and

protracted litigation.  Attorneys' fees were not determined until after the class members' recovery was decided upon.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *See* Declarations of Luis A. Cabassa, Brandon J. Hill and Marc R. Edelman, attached hereto as Exhibits "D," "E," and "F," respectively; *see also Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks").  Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### C.    The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class members, satisfying the third Rule 23(e)(2) factor.  The Settlement requires Defendant to pay up to $815,000.00 into a Settlement Account

to resolve the claims at issue.  This represents a gross recovery of approximately $18.44 per Settlement Class member ($815,000 ÷ 44,205 persons = $18.44).  This recovery falls well within the range of reasonableness for settlement purposes. *See e.g., Vazquez v. Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (approving COBRA notice settlement providing gross recovery of $13.00 per class member in 20,000 settlement class); *Gilbert v. SunTrust Banks, Inc*., Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (approving COBRA notice settlement in which each class member's gross recovery was $32.00 and net of $11.00); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement in COBRA notice case in which each class member's gross recovery was $24.00 and net of $13.00).

All Settlement Class members who do not opt-out and submit a claim form will share in the recovery.  The Eleventh Circuit has approved the use of "claims made" class settlements. *See, e.g., Poertner v. Gillette Co.*, 618 F. App'x 624, 625-26 and 628 (11th Cir. 2015), *cert. denied sub nom Frank v. Poertner*, 2016 U.S. LEXIS 1904 (2016) (approving class settlement where amounts to be paid to class members would be determined on a claims made basis, and where claim could be made either by submitting one page form online or by mail); *Carter v. Forjas*, 701

F. App'x 759 (11th Cir. 2017) (approving settlement where, if all class members participated, total settlement value would be $239.1 million, but assuming a claim rate of 10-to-25%, total settlement value would be $29.9 million to $73.6 million). *See also Poertner*, 618 F. App'x at 628, n.2_ ("'[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant'; indeed, the two types of settlements are 'fully synonymous.'") and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving reversionary fund class action settlement), *cert denied*, 2000 U.S. LEXIS 3952 (2000).

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and

the settlement falls within the range of reason.  Settlement negotiations that involve

arm's length, informed bargaining with the aid of experienced counsel support a

preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012

U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

In this case, there is a risk that the Court could determine that Defendants'

COBRA Notice complies with COBRA's requirements, or that COBRA requires

only substantial compliance and that the Notice substantially complies.  There is

also a risk that Plaintiff could recover nothing even if the Court were to determine

that the COBRA Notice at issue was deficient. *See, e.g.*, *Ctr. for Orthopedics &*

*Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30,

2015) (court did not impose statutory penalty because administrator did not act in

bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D.

Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award

statutory penalty even though administrator did not send COBRA notice to

plaintiff because administrator acted in good faith and plaintiff suffered no

damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011),

as modified (Sept. 22, 2011) (affirming district court's decision to decline to award

statutory penalties where plan participants were not "significantly prejudiced by

the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736

(6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). In addition, Defendants stopped using the COBRA form at issue in this case. Accordingly, the negotiated relief is more than adequate, and should be approved.

Moreover, the uncertainty surrounding Article III standing for Named Plaintiff pursuant to *Spokeo*, and for absent class members with the *Ramirez* decision pending at the Supreme Court, provided motivation for Named Plaintiff to settle the claims for both himself and absent class members.[6] If the litigation continued, Defendants would have asserted any available Article III defense. Because this case settled with pending motions to dismiss and for class certification, Named Plaintiff had yet to survive class certification, dismissal, or potentially summary judgment. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

---

[6] Even if *Ramirez* was not pending, Rule 23 certification for COBRA notice actions has been denied. *See, e.g., Brown-Pfifer v. St. Vincent Health, Inc.,* 2007 U.S. Dist. LEXIS 69930, at *26 (S.D. Ind. Sept. 20, 2007); *Kane v. United Indep. Union Welfare Fund,* 1998 U.S. Dist. LEXIS, at *19 (E.D. Pa. Feb. 24, 1998). Thus, it was not guaranteed that the Court would have certified a class on the basis of the contested motion for class certification and the response in opposition thereto in this case.

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The *pro rata* Settlement Class member recovery in this settlement is in line with per class member settlement amounts in similar cases.  Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the amount that could have been recovered through successful litigation.  Likewise, Defendants have agreed to pay up to $815,000.00 even thought they might have avoided liability altogether by continuing litigation, and capped their exposure at less than the amount they could owe to each Settlement Class member if they were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff supports the Settlement.  Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable

reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

**D.    The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats class members equitably.  In fact, they are treated identically.  As set forth above, with the Settlement Class comprised of approximately 44,205 members, each Settlement Class member who does not opt-out of the settlement will receive a gross settlement payment of $18.44, and a net settlement payment of $10.71.  This is a "claims made" settlement.   The claims process is simple and user-friendly, enabling class members to file claims by mail or through a portal on the Settlement website.

If Named Plaintiff had chosen to continue to litigate his claims, a successful outcome was not guaranteed.   As discussed above, Named Plaintiff faced significant risks with respect to liability, damages, and certification of a litigation class.  An unfavorable ruling on any of the three could have resulted in no recovery for class members.  With respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110.00 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1.   Whether or not to award statutory penalties is left

completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002).   In other words, even if Named Plaintiff was able to prove that Defendants violated the COBRA-notice regulation, Named Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.

To avoid the foregoing risks, it was reasonable for Named Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for members of the Settlement Class. See *Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### E.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class members (at best), and might have resulted in no relief at all.   In the absence of a settlement, Named Plaintiff would have had to take depositions, appear for his own deposition, engage in class certification motion practice, engage in summary

judgment motion practice, prepare for trial, and present his case at a trial on the merits. The costs associated with these litigation activities would have been significant. Moreover, even if Named Plaintiff had won certification of a class and litigated the class claims to a successful conclusion, it is likely that Defendants would have appealed any judgment entered against it, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into a settlement now, Named Plaintiff saved precious time and costs, and avoided the risks associated with further litigation.

## IV.    THE PROPOSED NOTICE OF SETTLEMENT IS REASONABLE.

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed .R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each member of the Settlement Class will be sent a Short Form Postcard Notice of the proposed settlement via U.S. First-Class Mail, informing them of the basic terms of the Settlement and their right to opt-out or object. The Short Form Notice will direct the Settlement Class members to the Settlement Administrator's website where additional information will be provided about the Settlement and claims process.

The content of the long form of the Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), the notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The proposed Notice of Settlement includes all of this information. In addition, the Notice of Settlement clearly spells out the terms of the proposed Settlement, provides a website address where class members can obtain a copy of the Settlement Agreement and other relevant documents, and includes a phone number that class members may call if they have any questions.

Accordingly, this Court should approve both the Short Form Postcard Notice and the long form Notice of Settlement, as both the contents of the notices and the methods of dissemination are reasonable.

## V.   CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(a) FOR SETTLEMENT PURPOSES.[7]

In addition to approving the proposed Settlement and Notice of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a).  "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification,

---

[7] The Parties have agreed that class certification as requested herein is for settlement purposes only.  As part of the settlement agreement, Defendants have retained the right to contest class certification if the settlement does not receive final approval by the Court.

a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

Specifically, with respect to similar COBRA notice class actions, courts have certified nearly identical classes for settlement purposes. *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc*., M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc*., M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63); *Silberstein v. Petsmart*, Inc., Case No.: 8:19-cv-02800-SCB-AAS (M.D.Fla. Dec. 4, 2020) (Doc. 38).

## A.    The Requirements of Rule 23(a) are Met.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a).

Named Plaintiff contends that he has satisfied all four requirements as set forth below; Defendants have agreed not to contest these contentions for purposes of settlement.

### 1.    Numerosity.

Rule 23(a)(1) requires Plaintiff to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable.  Here, there are approximately 44,205 members of the proposed Settlement Class.  Thus, the numerosity standard is easily satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

### 2.    Commonality.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks and citation omitted).

"The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D.

Fla. 2011) (internal brackets and quotations marks omitted).   Here, there are common issues regarding (among other things): (1) whether Defendants violated COBRA's notice requirements; (2) whether and to what extent statutory penalties are appropriate.   These common issues support certification of the proposed Settlement Class for settlement purposes only. *See Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (holding there was commonality where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class"); *Hornsby v. Macon Cty. Greyhound Park, Inc.,* 2013 U.S. Dist LEXIS 6235, at *5 (M.D. Ala. Jan. 16, 2013) (finding commonality satisfied and certifying COBRA notice class for settlement purposes).

### 3.    Typicality.

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.,* 275 F.R.D. at *3 n.8 (citation omitted).   Typicality is satisfied where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Named Plaintiff contends that he is typical of the Settlement Class that he seeks to represent, as he received the same COBRA notice as the putative class members and their claims stem from that COBRA notice; Defendants have agreed not to contest these contentions for purposes of settlement.   Accordingly, Rule 23(a)(3) is also satisfied. *See Pierce,* 2006 U.S. Dist. LEXIS 98847, at *13 (typicality met where "[a]ll of the class claims stem from Defendants' alleged failure to provide COBRA notices pursuant to the dictates of 29 U.S.C. § 1166, a common course of conduct, and are based upon the same legal theory").

### 4.   Adequacy.

The requirement of adequate representation addresses two issues: (1) whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673.   Here, Plaintiff's counsel has extensive experience litigating other class action cases. *See* Declarations of Luis A. Cabassa, Brandon J. Hill and Marc R. Edelman, attached hereto as Exhibits "D," "E," and "F," respectively.

Moreover, Named Plaintiff contends that "[t]here is nothing to indicate that [Plaintiff's] interests are in conflict with any members of the class," and Defendants have agreed not to contest these contentions for purposes of settlement.

31

*Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000).  To the contrary, Named Plaintiff "shares common interests with the class members and seek[s] the same type of relief[.]" *In re Checking Account Overdraft Litig.,* 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met.

**B.** **The Requirements of Rule 23(b)(3) for Class Certification are Also Met.**

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *Amchem,* 521 U.S. at 623.  Here, Named Plaintiff seeks certification under Rule 23(b)(3), which allows a class action to be maintained if: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  Both of these criteria are satisfied here.

**1.** **Predominance.**

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law … have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys.,*

*Inc. v. Humana Military Healthcare Servs.,* Inc., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  This requirement is "readily met" in consumer cases. *Amchem,* 521 U.S. at 624.

In the present case, Named Plaintiff contends that: the common questions identified above predominate over any individualized issues; the central issues revolve around a standardized COBRA notice that was common to all Settlement Class members, whether that notice complied with applicable regulations, and whether Defendants should be required to pay statutory penalties for utilizing that notice; and that in other, similar cases involving COBRA notices, courts have found that common issues predominated. *See, e.g., Slipchenko v. Brunel Energy, Inc.,* 2013 U.S. Dist. LEXIS 124159 (S.D. Tex. Aug. 30, 2013).  Defendants have agreed not to contest these contentions for purposes of settlement.

### 2.   **Superiority.**

The superiority requirement is also met.   Resolving Settlement Class Members' claims together in a class action is vastly superior to leaving each of them to fend for themselves.   Many Settlement Class Members who received Defendants' COBRA Notice are likely not even aware that their rights may have been violated, and are therefore unlikely to prosecute individual claims. *See Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366, 374 (N.D. Ill. 2008).

Moreover, given the relatively small size of the claims at stake (involving discretionary statutory penalties), it is unlikely that class members would have sufficient incentive to bring their claims on an individual basis. Moreover, even if Settlement Class members were able to individually prosecute their claims, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983). Thus, Named Plaintiff contends that a class action is superior to other available methods for fairly and efficiently adjudicating this dispute, and Defendants have agreed not to contest these contentions for purposes of settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter their proposed Preliminary Approval Order and thereby (a) certify the Settlement Class for settlement purposes only; (b) appoint Named Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel for settlement purposes; (c) authorize distribution of the Notice of Settlement to the Settlement Class; (d) set a Deadline to Opt Out or Object; and (e) set a date for a Final Approval Hearing, not to occur until at least ninety (90) days after the Court's Preliminary Approval Order.

DATED this 11th day of August, 2021.

Respectfully submitted,

By: /s/ Marc R. Edelman,
**MARC R. EDELMAN, ESQ.**
*Pro Hac Vice*
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A**.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-577-4722
Fax: 813-257-0572
Email: Edelman@forthepeople.com

AND

**BRANDON J. HILL, ESQ.**
*Pro Hac Vice*
Florida Bar No. 37061
E-mail: bhill@wfclaw.com
**LUIS A. CABASSA, ESQ.**
Florida Bar No. 53643
*Pro Hac Vice*
E-mail: lcabassa@wfclaw.com

**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
Facsimile: (813) 229-8712

AND

**ADEASH LAKRAJ, ESQ.**
Georgia Bar No. 44848
**MORGAN & MORGAN, PLLC**
191 Peachtree Street NE, Suite 4200
Atlanta, GA 30303

By: /s/ Shane Munoz
**SHANE T. MUÑOZ, ESQ.**
*Pro Hac Vice*
Florida Bar No. 0067024
smunoz@fordharrison.com
**NICHOLAS S. ANDREWS, ESQ.**
*Pro Hac Vice*
Florida Bar No. 0105699
nandrews@fordharrison.com
**FORDHARRISON, LLP**
101 East Kennedy Boulevard
Suite 900
Tampa, Florida 33602-5133
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

AND

**TIFFANY D. DOWNS**
Georgia Bar No. 228467
tdowns@fordharrison.com
**FORD & HARRISON LLP**
271 17th Street, NW Suite 1900
Atlanta, GA 30363
Telephone: (404) 888-3842
Facsimile: (404) 888-3863

*Attorneys for Defendant*

PO Box 57007
Atlanta, GA 30343-1007
Telephone: (404) 965-1909
Facsimile: (470) 639-6899
Email: Alakraj@forthepeople.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 11th day of August, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

<u>/s/ <em>Marc R. Edelman</em>             </u><br>
<strong>MARC R. EDELMAN, ESQ.</strong>