**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**TRAVIS MENDIOLA, individually**
**and on behalf of all others similarly**
**situated,**

      **Plaintiff,**

**v.**                    **CASE NO.:  1:20-cv-04027-ELR**

**HOME DEPOT U.S.A., INC.,**
**and THE ADMINISTRATIVE**
**COMMITTEE HOME DEPOT**
**U.S.A., INC.,**

      **Defendants.**
_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**
**SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW**

      The Class Representative, Travis Mendiola ("Plaintiff"), pursuant to

Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties'

Class Action Settlement.[1]

      On October 8, 2021, this Court issued an Order preliminarily approving the

Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action
Settlement and Release ("Settlement Agreement"), filed on August 11, 2021.  (*See* Doc. 74-2).

between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 75).  In that Order the Court held as follows:

> The Court has determined that the proposed terms of the Settlement satisfy the criteria of Federal Rule of Civil Procedure 23(e) such that the Court will likely be able to approve the proposed Settlement as fair, reasonable, and adequate. The Court further finds that the Settlement is the result of arm's-length negotiations, and was reached with the assistance of a class action mediator.

(Doc. 75, p. 4, ¶¶ 10-11).

Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members.  Thus far, the response from class members is overwhelmingly positive.  As indicated by the attached sworn declaration from the settlement administrator, 3,274 class members filed claims to ensure they receive payments.[2]  Importantly, zero class members objected to the settlement.  Moreover, there's only been one request for exclusion.[3] The objection and exclusion deadlines have now passed.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court

---

[2] (See Sworn Declaration from Settlement Administrator, American Legal Claim Services, LLC ("Salhab Decl."), ¶¶ 10-12).
[3] Id.

enter the Final Approval Order attached as Exhibit A.  Defendant does <u>not</u> oppose this Motion.  In further support thereof, Plaintiff states as follows:

## I.     <u>BACKGROUND AND OVERVIEW OF SETTLEMENT</u>.

On July 9, 2020, Plaintiff filed a Class Action Complaint against Defendants in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  In his Complaint Named Plaintiff alleged Defendants violated the COBRA notice requirements by providing him and the putative class members whom he seeks to represent with a deficient COBRA notice ("COBRA Notice") in violation of  29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a).  The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendants.

The settlement provides for settlement payments to be made to approximately 44,205 class members.  Defendants will create a common fund for class members consisting of a maximum of $815,000.00 ("Common Fund").[4]  If the requested

---

[4] The Common Fund will be capitalized on a "claims made" basis.  However, for purposes of assessing attorneys' fees, costs, and settlement administration costs, the total capitalization of the Common Fund will be considered to be the $815,000.00—the maximum amount to be paid by Defendants if all Class Members were to submit claims.

amounts are granted for attorneys' fees, costs, and administrative expenses, the parties anticipate that each Class Member who submits a claim will receive a net payment of approximately $10.71. Given the size of the class, this net amount is consistent with COBRA class action settlements that have been approved by other federal courts. The proposed settlement is fair and reasonable, and should be granted final approval by the Court.

## A. Allegations included in Named Plaintiff's Complaint.

This is a putative class action brought by Named Plaintiff against Defendants under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendants provided Named Plaintiff and other class members with a deficient COBRA Notice. More specifically, Named Plaintiff asserted that Defendants' COBRA Notice did not adequately inform him how to exercise his rights to elect COBRA coverage because the Notice failed to: (i) identify the Plan Administrator; and, (ii) was not written in a manner calculated to be understood by the average plan participant, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. As a result of the alleged violations in the Complaint, Named Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of himself and all others similarly situated.

This Action was initially brought in the United States District Court for the Middle District of Florida, Tampa Division.  On August 3, 2020, Defendants filed their 28 U.S.C. § 1404 Motion to Transfer Venue. (Doc. 13).  On September 24, 2020, Defendants filed their Motion to Dismiss Plaintiff's original Complaint. (Doc. 32).  On September 30, 2020, the action was transferred to this Court. (Doc. 34).  On October 6, 2020, Named Plaintiff amended his complaint (Doc. 39), after which Defendants again moved to dismiss the action. (Doc. 71).  The parties also engaged in significant written discovery.  On March 1, 2021, Named Plaintiff moved for class certification. (Doc. 69).  That same day, the parties attended mediation with Mr. Burruezo.  No settlement was obtained at mediation.  However, after over a month of continuing and often contentious negotiations with Mr. Burruezo serving as the intermediary, the parties reached a settlement in principle.  The parties have documented and negotiated the finer points of settlement, memorialized in the class action settlement, for which they now seek court approval.

## B.    **Defendants' Defenses.**

Had mediation been unsuccessful, Defendants had available to it a myriad of defenses to Named Plaintiff's allegations, including Article III standing arguments based on *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016) and its progeny.  Defendants deny, and continue to deny, that they violated 29 U.S.C. § 1166(a) and 29 C.F.R. §

2590.606-4 with regard to the Named Plaintiff and/or any putative class.  In fact, as part of the Settlement Agreement, Defendants specifically deny that they engaged in any wrongdoing, do not admit or concede any actual or potential fault, and deny any wrongdoing or liability in connection with any facts or claims that have been alleged against them in the Action.  Defendants also deny that the claims asserted by Named Plaintiff are suitable for class treatment.  The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendants, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendants agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

C.    **Settlement Negotiations and Mediation**.

The Parties attended an all-day mediation before a highly-respected mediator, Carlos Burruezo, on March 1, 2021.  After extensive arm's length negotiations between experienced counsels for a full day with no deal reached, the Parties opted to continue negotiations after mediation concluded (but still with Mr. Burruezo's

assistance).  After further negotiations, on April 15, 2021, the parties reached a settlement in principle.

As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement"), attached as Exhibit "B" to the Motion for Preliminary Approval (*see* Doc. 74-2), for which they now seek final Court approval.  The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon this litigation as to the Named Plaintiff and all putative class members.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants in the Home Depot Medical and Dental Plan/The Home Depot Group Benefits Plan (the "Plan") to whom, as a result of a qualifying event, a COBRA Notice was addressed and sent from July 9, 2019 through September 20, 2020 as determined by Home Depot's records, and did not elect continuation coverage."  (Referenced herein as the "Settlement Class").

**B.**    **Benefits to the Settlement Class and Named Plaintiff**.

The Settlement Agreement, if granted final approval by this Court, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendants' agreement to pay a maximum amount of $815,000.00 to the Common Fund, depending on the number of Class Member claims submitted. The parties negotiated the case on a common fund basis, meaning that the settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and administrative expenses. The parties did not reach agreement on attorneys' fees until after all terms related to payments to class members, and the class definition, were agreed upon.

With the Settlement Class comprised of approximately 44,205 members, each Settlement Class member who does not opt-out of the settlement will receive a gross settlement payment of $18.44. This is a "claims made" settlement. Settlement Class members will be required to submit claim forms to receive a share of the settlement proceeds. The agreed-upon claims process makes it easy for class members to submit claims – claims can be submitted by mail or by submitting a claim through the settlement website. If the requested amounts are granted for attorneys' fees, costs, and administrative expenses, the parties anticipate that each Class Member will receive a net payment of approximately $10.71.

8

The Settlement Agreement also provides that Plaintiff's Counsel's fees are to come out of the fund, subject to the Court's approval.  Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees, plus costs, limited to those defined by Rule 54 of the Federal Rules of Civil Procedure and fees paid by Named Plaintiff to the Mediator, not to exceed $5,000.00 in total.  Neither settlement approval nor the size of the settlement fund is contingent upon the full amount of any requested fees or costs.

The Named Plaintiff is not seeking compensation for his service to the Settlement Class.  However, Named Plaintiff, a nine-year employee, is receiving compensation as consideration for executing a General Release and agreeing not to seek re-employment with Defendant. (*See* Exhibit "C" to the Motion for Preliminary Approval, Doc. 74-3).

## C.    **Administration of Notice and the Class Members' Reactions**.

The Settlement Class Members overwhelmingly accepted the Settlement. There were <u>zero objections</u>.  Only <u>one class member asked to be excluded</u>.[5]  *See* Salhab Decl., ¶¶ 11-12.

---

[5] Margaret Reinhard asked to be excluded and, thus, should not be bound by the settlement.  *See* Salhab Decl., ¶ 11.

More specifically, the Parties hired a private, third-party vendor, American Legal Claim Services, LLC ("Settlement Administrator"), to administer notice and to manage the Common Fund in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Common Fund.

Following the Court's preliminary approval Order of the Settlement Agreement, specifically on November 1, 2021, the Settlement Administrator mailed the Court-approved Notice Form, attached to the Settlement Agreement, by U.S. mail to all Settlement Class members. *See* Salhab Decl., ¶¶ 6-12. The Notice Form apprised the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class members' eligibility to recover their pro-rata portion of the settlement proceeds. *See* Salhab Decl., ¶¶ 10-11. It also included an explanation of the "claims made" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. *See* Docs. 74-1, pp. 11-12, pp. 14-25. The Notice also directed recipients to the Settlement website for additional information. *Id*.

The Settlement website contained information about the Settlement and claims process, including: (1) a copy of the Settlement Agreement; (2) Settlement Class members' right to object and how to do so within forty-five (45) days; (3) their

right to exclude themselves by opting out and how to do so within forty-five (45) days; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.   Salhab Decl., ¶ 14.

According to the settlement administrator, over 95% of the notices to the 44,203 class members were deemed delivered.  Salhab Decl., ¶¶ 10-12.  There were a total of 3,274 valid claims filed, which is well in line with historical class action claims rates.  *Id.*  Finally, as set forth previously, there were zero objections and only a single exclusion.  *Id.*

**D.    <u>Attorneys' Fees and Expenses</u>.**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for (1) up to one-third of the common fund as attorneys' fees, plus (2) costs limited to costs as defined by Rule 54 of the Federal Rules of Civil Procedure, plus amounts actually paid by Named Plaintiff to the Mediator, but limited to no more than $5,000.00 in total.  Class Counsel filed a separate motion seeking approval for fees and costs on December 2, 2021.  *See* Doc. 76.  Defendants do not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total fund, plus costs as defined above, not to exceed $5,000.00.

E.    **Class Action Fairness Act Notice**.

The Settlement Administrator caused notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), on October 15, 2021. *See* Salhab Decl., ¶ 3.

## III.    THE SETTLEMENT MEETS THE REQUIREMENTS OF RULE 23(e) FOR FINAL APPROVAL.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members.  This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009).  "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6.

The second step—the procedural stage this matter is now in—following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*.

To be sure, the decision whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas*

*Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter an order granting final approval of the Class Action Settlement Agreement.

**A.    The Class Representative and Class Counsel Have Adequately Represented the Class.**

There is no question that Travis Mendiola and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately

prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Travis Mendiola, is adequate given that his interests are equivalent to those of the Settlement Class. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class members in prosecuting his claims. He, along with his counsel, secured an $815,000.00 settlement from highly sophisticated Defendants in favor of the class members he seeks to represent.

With respect to Class Counsel, as demonstrated in the attached declarations, the proposed attorneys have extensive class action experience, and have been appointed as class counsel in many, many class action cases, including the following recent COBRA class action cases: *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); *Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersigned as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No.: 8:18-cv-01070-WFJ-

CPT (M.D. Fla. June 21, 2019) (Doc. 63); *Silberstein v. Petsmart*, Inc., Case No.: 8:19-cv-02800-SCB-AAS (M.D. Fla. Dec. 4, 2020) (Doc. 38).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g.*, *UAW v. Ford Motor Co*., 2008 WL 4104329 at \*26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").  Thus, the proposed settlement satisfies Rule 23(e)(2)'s first component, adequacy.

**B.** **The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations that were overseen by an experienced and impartial mediator who was selected by the parties and approved by the Court. (Doc.

30).  This also weighs in favor of approval. *See Perez v. Asurion Corp.,* 501 F. Supp.

2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive

in part because it was overseen by "an experienced and well-respected mediator").

    The proposed Settlement, and the record in this case, show that the Settlement

Agreement was the product of extensive and detailed arm's-length—and extended—

negotiations between the Parties and their counsel.   The Parties participated in

mediation with Mr. Burruezo at great expense to both sides and with no promise

Plaintiff's counsel would recover anything at all.  The Parties and counsel were well-

informed of the potential strengths and weaknesses of their positions and conducted

good  faith  negotiations  in  an  effort  to  avoid  costly  and  protracted  litigation.

Attorneys' fees were not determined until after the class members' recovery was

decided upon.

    Moreover,  as  stated  above,  all  counsel  involved  in  the  negotiations  are

experienced in handling class action litigation and complex litigation, and are clearly

capable of assessing the strengths and weaknesses of their respective positions. *See*

Declarations of Luis A. Cabassa, Brandon J. Hill and Marc R. Edelman, attached as

Exhibits "D," "E," and "F," respectively to the Motion for Preliminary Approval

(*see* Docs. 74-4, 74-5, and 74-6; *see also Pierre-Val*, 2015 U.S. Dist. LEXIS at *2

("courts should give weight to the parties' consensual decision to settle class action

cases, because they and their counsel are in unique positions to assess the potential

risks").  Where there "is no evidence of any kind that the parties or their counsel

have colluded or otherwise acted in bad faith in arriving at the terms of the proposed

settlement … counsel's informed recommendation of the agreement is persuasive

that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226

F.R.D. 696, 703 (M.D. Fla. 2005).

**C.    The Settlement Provides Significant Relief to Class Members.**

As detailed above, the Settlement will provide substantial relief to Settlement

Class members, satisfying the third Rule 23(e)(2) factor.  The Settlement requires

Defendant to pay up to $815,000.00 into a Settlement Account to resolve the claims

at issue.  This represents a gross recovery of approximately $18.44 per Settlement

Class member ($815,000 ÷ 44,205 persons = $18.44).  This recovery falls well

within the range of reasonableness for settlement purposes. *See e.g., Vazquez v.*

*Marriott International, Inc*., M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb.

27, 2020, Doc. 127) (approving COBRA notice settlement providing gross recovery

of $13.00 per class member in 20,000 settlement class); *Gilbert v. SunTrust Banks,*

*Inc*., Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (approving

COBRA notice settlement in which each class member's gross recovery was $32.00

and net of $11.00); *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW

(M.D. Fla. Sept. 5, 2018) (court approved settlement in COBRA notice case in which each class member's gross recovery was $24.00 and net of $13.00).

All Settlement Class members who do not opt-out and submit a claim form will share in the recovery.  The Eleventh Circuit has approved the use of "claims made" class settlements. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 625-26 and 628 (11th Cir. 2015), *cert. denied sub nom Frank v. Poertner*, 2016 U.S. LEXIS 1904 (2016) (approving class settlement where amounts to be paid to class members would be determined on a claims made basis, and where claim could be made either by submitting one page form online or by mail); *Carter v. Forjas*, 701 F. App'x 759 (11th Cir. 2017) (approving settlement where, if all class members participated, total settlement value would be $239.1 million, but assuming a claim rate of 10-to-25%, total settlement value would be $29.9 million to $73.6 million). *See also Poertner*, 618 F. App'x at 628, n.2_ ("'[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant'; indeed, the two types of settlements are 'fully synonymous.'") and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving reversionary fund class action settlement), *cert denied*, 2000 U.S. LEXIS 3952 (2000).

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)).  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

In this case, there is a risk that the Court could determine that Defendants' COBRA Notice complies with COBRA's requirements, or that COBRA requires only substantial compliance and that the Notice substantially complies.  There is also a risk that Plaintiff could recover nothing even if the Court were to determine that the COBRA Notice at issue was deficient. *See, e.g.*, *Ctr. for Orthopedics & Sports*

*Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). In addition, Defendants stopped using the COBRA form at issue in this case. Accordingly, the negotiated relief is more than adequate, and should be approved.

Moreover, the uncertainty surrounding Article III standing for Named Plaintiff pursuant to *Spokeo*, and for absent class members with the *Ramirez* decision pending at the Supreme Court at the time of settlement, provided motivation for

Named Plaintiff to settle the claims for both himself and absent class members.[6]  If

the litigation continued, Defendants would have asserted any available Article III

defense.  Because this case settled with pending motions to dismiss and for class

certification, Named Plaintiff had yet to survive class certification, dismissal, or

potentially summary judgment.  Each of these phases of litigation presented serious

risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid.

*See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)

("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow

even partial recovery for class members where the results of suits are uncertain.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the

class will lose should the suit go to judgment on the merits justifies a compromise

that affords a lower award with certainty."); *see also In re Mexico Money Transfer*

*Litigation*, 267 F.3d 743 (7th Cir. 2001).

The *pro rata* Settlement Class member recovery in this settlement is in line

with per class member settlement amounts in similar cases.  Under the Parties'

---

[6] Even if *Ramirez* was not pending at the time of settlement, Rule 23 certification for COBRA
notice actions has been denied. *See, e.g., Brown-Pfifer v. St. Vincent Health, Inc.,* 2007 U.S. Dist.
LEXIS 69930, at *26 (S.D. Ind. Sept. 20, 2007); *Kane v. United Indep. Union Welfare Fund,* 1998
U.S. Dist. LEXIS, at *19 (E.D. Pa. Feb. 24, 1998).  Thus, it was not guaranteed that the Court
would have certified a class on the basis of the contested motion for class certification and the
response in opposition thereto in this case.

Settlement Agreement the Settlement Class members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the amount that could have been recovered through successful litigation.

Likewise, Defendants have agreed to pay up to $815,000.00 even thought they might have avoided liability altogether by continuing litigation, and capped their exposure at less than the amount they could owe to each Settlement Class member if they were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement.

More importantly, as set forth above, following entry of the Court's Order granting preliminary approval of the Parties' class action settlement (*see* Doc. 75), the Settlement Class Administrator sent a Notice of Settlement via first class mail to all Settlement Class Members. As indicated by the attached sworn declaration from the settlement administrator, 3,274 class members filed claims to ensure they receive payments.[7] Importantly, thus far <u>zero</u> class members have <u>objected</u> to the settlement.

---

[7] (*See* Sworn Declaration from Settlement Administrator, American Legal Claim Services, LLC ("Salhab Decl."), ¶¶ 10-12).

Moreover, there's only been <u>one</u> request for <u>exclusion</u>. The deadline to object or ask to be excluded has now passed.

**D.    The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 44,205 members, each Settlement Class member who does not opt-out of the settlement will receive a gross settlement payment of $18.44, and a net settlement payment of $10.71. This is a "claims made" settlement. The claims process is simple and user-friendly, enabling class members to file claims by mail or through a portal on the Settlement website.

If Named Plaintiff had chosen to continue to litigate his claims, a successful outcome was not guaranteed. As discussed above, Named Plaintiff faced significant risks with respect to liability, damages, and certification of a litigation class. An unfavorable ruling on any of the three could have resulted in no recovery for class members. With respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110.00 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Named Plaintiff was able

to prove that Defendants violated the COBRA-notice regulation, Named Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all.

To avoid the foregoing risks, it was reasonable for Named Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for members of the Settlement Class. See *Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

**E.      The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class members (at best), and might have resulted in no relief at all.  In the absence of a settlement, Named Plaintiff would have had to take depositions, appear for his own deposition, engage in class certification motion practice, engage in summary judgment motion practice, prepare for trial, and present his case at a trial on the merits.  The costs associated with these litigation activities would have been significant.  Moreover, even if Named Plaintiff had won certification of a class and litigated the class claims

to a successful conclusion, it is likely that Defendants would have appealed any judgment entered against it, resulting in further expense and delay.

Complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into a settlement now, Named Plaintiff saved precious time and costs, and avoided the risks associated with further litigation.

## IV.  ADDITIONAL FACTORS SUPPORTING FINAL APPROVAL- THE PROPOSED CLASS HAS PREVIOUSLY BEEN CERTIFIED AND <u>THE NOTICE PLAN APPROVED.</u>

### A.  <u>The Class Has Already Been Certified on a Preliminary Basis</u>.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 75). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### B.  <u>Notice to the Class under Fed.R.Civ.P. 23(e)(1)</u>.

Under Fed.R.Civ.P. 23(e)(1), Courts typically analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the

Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by sending out the Court-approved short form version of the notice to all 44,000+ class members via U.S. Mail.  That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information.  Thus, notice was sufficient.

**C.**    **Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other.  This standard is satisfied here and the Court should enter a Final Order approving the Class Action Settlement Agreement.

26

**D.**    **The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.**

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 74-2 the settlement agreement for which they seek final approval and also the general release agreement at Doc. 74-3.

Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## III.    CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## IV.    CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does <u>not</u> oppose the relief requested herein.

DATED this 28th day of January, 2022.

Respectfully submitted,

/s/Brandon J. Hill

**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of January, 2022, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brandon J. Hill

**BRANDON J. HILL**

28